**Dean A. MATTHEWS,**
**Plaintiff-Appellant,**

v.

**ALLIS–CHALMERS, a corporation,**
**Defendant-Appellee.**

No. 84–2692.

United States Court of Appeals,
Seventh Circuit.

Argued April 26, 1985.
Decided Aug. 5, 1985.

Gerald C. Moton, Homewood, Ill., for plaintiff-appellant.

Nina G. Stillman, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendant-appellee.

Before ESCHBACH and FLAUM, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.*

PER CURIAM.

Dean A. Matthews appeals from the district court's[1] grant of summary judgment along with an award of costs to his former employer, Allis-Chalmers. Matthews had brought suit against Allis-Chalmers alleging that the company had violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1982), in terminating him in 1982. The district court, 614 F.Supp. 11, held that Matthews had failed to establish a prima facie case of age discrimination. We affirm the district court's grant of summary judgment.

## I. Facts

Allis-Chalmers hired Matthews as a designer in 1957. During his employment with Allis-Chalmers Matthews held the titles of chief engineer, project engineer, and product engineer, and was always on salary. On two occasions, in February 1975 and October 1981, Matthews was demoted from chief engineer positions to product engineer.

In 1982, at the time of his termination, Matthews was serving as a product engineer and reported to Richard Killeen, chief engineer of the Product Development Department. Because of a serious decline in business in the early 1980s, Allis-Chalmers was forced to let go of a number of employees for economic reasons. As a result of one such reduction in force, Killeen discharged Matthews on November 12, 1982. At the time Matthews was fifty-four years old, four months short of his fifty-fifth birthday when he would have been eligible for early retirement benefits. Thirteen other employees were also terminated on November 12, six of whom were also over forty years old. Of the 221 salaried employees terminated by Allis-Chalmers between January 4, 1980 and December 30, 1983 as a result of economic reductions in force, eighty were forty years of age or older.

After filing charges of age discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission, Matthews filed this suit on November 3, 1983. The parties engaged in pretrial discovery and submitted deposi-

---

* The Honorable Floyd R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit is sitting by designation.

1. The Honorable Bernard M. Decker, Senior District Judge for the Northern District of Illinois.

tions, affidavits, and other documentary evidence to the court. The district court entered an order granting Allis-Chalmers' motion for summary judgment, and awarding costs against Matthews, on September 5, 1984. Matthews now appeals to this court, asking that the district court's September 5, 1984 order be reversed.

## II. Propriety of Grant of Summary Judgment

This court has held that the burden of proof formula set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII case, applies in cases under the ADEA. *See La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 n. 1 (7th Cir.1984); *Huhn v. Koehring Co.*, 718 F.2d 239, 243 (7th Cir.1983); *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1222 (7th Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). Under that formula, a plaintiff has the initial burden of establishing a prima facie case of age discrimination. If he succeeds, the burden shifts to the employer to articulate a valid reason for the employment decision. Once the employer states a valid justification for the firing, the employee must prove that the justification was a mere pretext for discrimination; that is, but for the employee's age he would not have been fired. *Parker v. Federal National Mortgage Association*, 741 F.2d 975, 978–79 (1984) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)); *Huhn*, 718 F.2d at 242.

The First Circuit in *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir.1979), modified the *McDonnell Douglas* prima facie requirements to fit an age discrimination case, and held that a plaintiff establishes a prima facie case in a claim under the ADEA by showing: (1) that he belongs to the protected age group; (2) that he was performing his job satisfactorily; (3) that he nevertheless was fired; and (4) that his employer sought someone to perform the same work after he left. *See also Huhn*,

718 F.2d at 243. As the district court noted, however, "[t]he last element has no role in a reduction-in-force case such as this one; by definition, when the employer reduces his work force he hires no one to replace the ones he lets go." In *Williams v. General Motors Corp.*, 656 F.2d 120, 128–29 (5th Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982), the Fifth Circuit recognized the special nature of reduction-in-force situations and fashioned specific prima facie requirements to be applied in that type of case. The court held that in a job reduction situation, a plaintiff can establish a prima facie case under the ADEA by: 1) showing he was within the protected age group; 2) showing he was adversely affected, either through discharge or demotion; 3) showing he was qualified to assume another position at the time of the discharge or demotion; and 4) producing circumstantial or direct evidence from which a factfinder might reasonably conclude that the employer intended to discriminate in making the employment decision in issue. *Id.* at 129. *See also La-Grant v. Gulf & Western Manufacturing Co.*, 748 F.2d 1087, 1090–91 (6th Cir.1984); *Allison v. Western Union Telegraph Co.*, 680 F.2d 1318, 1321 (11th Cir.1982).

We agree with the district court that Matthews did not establish a prima facie case because he failed to produce any evidence from which the court could infer that Allis-Chalmers more likely than not fired him because of his age. Matthews provided no evidence, direct or circumstantial, that age in any way entered into the decision to terminate him. Nor do the statistics on salaried employees terminated over a four year period (1980–1983), where eighty of the 221 were in the protected class, show or indicate that the company favored younger workers over older workers. *LaGrant*, 748 F.2d at 1089. Richard Killeen, Matthews' supervisor who was told to reduce his department by two employees, stated that he made his decision by considering the relative technical competence of, and the administration of that technical competence by the department

employees. Using these criteria, Killeen rated Matthews the lowest among the four engineers in the department in terms of his contribution to the department. Killeen knew that projects which Matthews had been in charge of had not been completed on schedule or within their budgets, and had serious design problems.

■ Matthews asks us to draw as reasonable inferences from the evidence that Killeen's stated reasons for retaining Carl Clausen and Paul Artwohl over Matthews were pretextual. Killeen determined Clausen to be a greater asset to the department than Matthews because Clausen had been doing extensive work on cost impact between the engineering and manufacturing engineering departments. Matthews contends that because Killeen had never conducted a formal performance evaluation on Clausen, and because Killeen did not know how long he had been doing the cost impact work before he came to Killeen's group, a reasonable inference can be drawn that Clausen had not done extensive cost impact work, or at least Killeen was unaware of it, when Matthews was targeted for discharge. This court, however, "is not required to evaluate every *conceivable* inference which can be drawn from evidentiary matter, but only reasonable ones." *Parker*, 741 F.2d at 980 (emphasis in original). Matthews has simply failed to contradict the facts that Clausen was performing the cost impact work, and that Killeen knew of this work, when the decision to discharge Matthews was made.

As to the retention of Artwohl over Matthews, Killeen concluded that Artwohl would make a greater contribution to the department than Matthews, based on their respective performances in delivering projects on schedule and on budget. In particular, Matthews had been unable to discover and fix design problems on the World Truck Mast, whereas Artwohl had. Although Matthews concedes that Artwohl

had discovered the design problems before the termination decision was made, he contends a reasonable inference can be made that Artwohl had not solved the problems until after that decision. In support of this contention Matthews cites an Operations Report dated November 5, 1982, which states that the redesigned tilt anchor crosstie "is being prototyped and will be strained gauged week of 11/8/82," the week in which Killeen decided to terminate Matthews. Killeen stated in his deposition that such testing was performed *after* the work of Matthews' and Artwohl's department was completed. Thus Matthews has not contradicted the fact that Artwohl had completed the redesign, and that Killeen knew that he had done so before Killeen decided to terminate Matthews.

The remaining evidence does not aid Matthews in his burden to show that age was a factor in the termination decision. Although he contends that he and another former employee, Walter Pivarunas, were terminated because they would soon qualify for early retirement benefits, Matthews supports this contention only with his personal beliefs. Finally, the statistics representing Allis-Chalmers' reductions-in-force do not bolster Matthews' case. Statistics generally are not of significance in age discrimination cases "unless the disparities in treatment are quite large." *Kephart*, 630 F.2d at 1224.[2] If anything the statistics involved here appear to establish that the protected class was favorably treated. Of the 221 salaried employees terminated between January 4, 1980 and December 30, 1983 because of economic reductions in force, only eighty were forty years of age or older.

In sum, Matthews has simply failed to show that "but for" his age, he would not have been discharged. Matthews' termination came about as part of a legitimate economic job reduction. The ADEA was "not intended as a vehicle for judicial review of business decisions." *Kephart*, 630

---

**2.** The lack of significance accorded statistics stems from the fact that discharged employees will naturally "more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones move in." *Kephart*, 630 F.2d at 1224 (quoting *Laugeson v. Anaconda Co.*, 510 F.2d 307, 313 n. 4 (6th Cir.1975)).

F.2d at 1223. Summary judgment is many times inappropriate in discrimination cases, in which issues of motive and intent are often involved. *Huhn,* 718 F.2d at 242; *Kephart,* 630 F.2d at 1218. As in *Huhn* and *Kephart,* however, the plaintiff here has no indications of discriminatory motive and intent to "put on the scales for weighing" before a factfinder. *Kephart,* 630 F.2d at 1218. Therefore the district court properly granted summary judgment to Allis-Chalmers.

### III. Costs

Matthews also argues that the district court erred in awarding costs to Allis-Chalmers. Section 7(b) of the ADEA, 29 U.S.C. § 626(b), incorporates by reference section 16 of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216 (1982). That section provides in part that in an action to establish liability against an employer, the court shall "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (1982). Matthews contends that because the ADEA incorporates this section by reference, the ADEA clearly authorizes an award of costs to a prevailing plaintiff only. In support of his contention he cites *Mizrany v. Texas Rehabilitation Commission,* 522 F.Supp. 611 (S.D.Tex. 1981), *aff'd mem.,* 685 F.2d 1384 (5th Cir. 1982).

■ We disagree with Matthews' contention, and affirm the district court's award of costs to Allis-Chalmers. Fed.R.Civ.P. 54(d) states in relevant part that "[e]xcept when *express provision* therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs...." (Emphasis added). Contrary to Matthews' argument, section 16 of the FLSA as incorporated by the ADEA does not constitute "an express provision" precluding the award of costs to a prevailing defendant. That section merely details the remedies available to prevailing plaintiffs, without addressing the award of costs available to successful de-

fendants. Matthews' citation of *Mizrany* is inapposite. The court in that case held only that the ADEA does not authorize the award of attorney fees to prevailing defendants, without touching on the issue of costs. 522 F.Supp. at 618.

■ The district court acted within its sound discretion in awarding costs to Allis-Chalmers as the prevailing party under Rule 54(d). *See Badillo v. Central Steel & Wire Co.,* 717 F.2d 1160, 1165 (7th Cir. 1983); *Clark v. Universal Builders, Inc.,* 501 F.2d 324, 341 (7th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974). A district court cannot, as Matthews would suggest, decline to award costs just because the losing party was acting in good faith. *Coyne-Delaney v. Capital Development Board of the State of Illinois,* 717 F.2d 385, 390 (7th Cir.1983); *Gardner v. Southern Railway Systems,* 675 F.2d 949, 954 (7th Cir.1982). Because Matthews presents us with no other reason why the district court should not have granted costs to Allis-Chalmers, we conclude that the court did not abuse its discretion and affirm the award.

### IV. Conclusion

The district court's order granting summary judgment and costs to Allis-Chalmers is affirmed.

FLAUM, Circuit Judge, concurring.

I join fully in the majority's holding, and in much of the reasoning supporting its holding, that the district court properly granted summary judgment and costs to the defendant in this case. I write separately to express my disagreement with the majority's conclusion that in order to establish a prima facie case of age discrimination in reduction-in-force ("RIF") cases, a plaintiff must "produc[e] circumstantial or direct evidence from which a factfinder might reasonably conclude that the employer intended to discriminate in making the employment decision in issue." *Ante* at 1217. By substantially increasing the prima facie burden that a plaintiff must carry, I believe that the majority's burden of

proof formula departs from the teaching of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Rather than creating this additional burden, I would allow a plaintiff to establish a prima facie case of age discrimination in a RIF case by showing that he was in the protected age group, that he was performing according to his employer's legitimate expectations, and that he was nevertheless discharged while younger employees were either retained to perform the plaintiff's job or permitted to transfer into some similar job for which the plaintiff was also qualified. Applying this test, I would affirm the summary judgment in this case not on the ground that the plaintiff failed to establish a prima facie case of discriminatory discharge under the ADEA, but rather on the ground that the defendant provided a nondiscriminatory justification for the discharge and the plaintiff offered no evidence to show that this justification was a pretext for discrimination.

### I.

As the majority opinion notes, the burden of proof formula set forth by the Supreme Court in *McDonnell Douglas* has been our touchstone in deciding disparate treatment claims in this circuit, whether brought under Title VII or the ADEA. *See also Trans World Airlines, Inc. v. Thurston,* — U.S. ——, 105 S.Ct. 613, 622, 83 L.Ed.2d 523 (1985) (assuming without expressly deciding that *McDonnell Douglas* formula applies to ADEA suits). The Court in *McDonnell Douglas,* which involved a claim of racially discriminatory refusal to hire, held that a plaintiff could establish a prima facie case by showing: (1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. 411 U.S. at 802, 93 S.Ct. at 1824. This circuit has applied a slightly modified version of this formula in cases involving discriminatory discharge under the ADEA, requiring the plaintiff to show: "(1) that he was in the protected class, (2) that he was doing his job well enough to meet his employer's legitimate expectations, (3) that in spite of his performance he was discharged, and (4) that the employer sought a replacement for him." *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984) (footnote omitted); *Huhn v. Koehring Co.,* 718 F.2d 239, 243 (7th Cir.1983).

The *McDonnell Douglas* formulation of the plaintiff's prima facie burden in discrimination cases serves two significant functions. *Jayasinghe v. Bethlehem Steel Corp.,* 760 F.2d 132, 134–35 (7th Cir.1985). First, the burden "eliminates the most common nondiscriminatory reasons for the plaintiff's rejection," and thus "[t]he employer is spared unnecessary litigation expense by its ability to file a motion to dismiss, a motion for summary judgment, or a motion for directed verdict where the plaintiff fails to distinguish his or her case from the ordinary, legitimate kind of adverse personnel decision...." *Id.* at 134. Second, the *McDonnell Douglas* formula allows a plaintiff to establish a prima facie case without directly proving discriminatory intent. *See Jayasinghe,* 760 F.2d at 135; *La Montagne,* 750 F.2d at 1409–10. This function is critical because of the manifold difficulties facing a plaintiff attempting to prove any kind of unlawful discrimination, and in particular discrimination based on age:

> Age discrimination may be subtle and even unconscious. Even an employer who knowingly discriminates on the basis of age may leave no written records revealing the forbidden motive and may communicate it orally to no one. When the evidence is in existence, it is likely to be under the control of the employer, and the plaintiff may not succeed in turning it up.

*La Montagne,* 750 F.2d at 1410 (citation omitted). Further, even indirect evidence that affirmatively suggests discrimination may be difficult for a plaintiff to find. As

the majority notes, one of the most common forms of indirect evidence—statistics showing a pattern of disparate treatment—is "generally ... not of significance in age discrimination cases 'unless the disparities in treatment are quite large.'" *Ante* at 1218 (quoting *Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1224 (7th Cir. 1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)).

Just as a plaintiff-employee can easily establish a prima facie case of discrimination under *McDonnell Douglas,* a defendant-employer can overcome a plaintiff's prima facie showing merely by introducing evidence sufficient to "raise[ ] a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (footnote omitted). "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Id.* at 255, 101 S.Ct. at 1094 (footnote omitted). Thus, the establishment of a prima facie case does no more than require the employer to provide some explanation for its employment decision, supported by a minimal amount of evidence, so that the employee "will have a full and fair opportunity" to meet the ultimate burden of proving that the employer's explanation is a pretext for discrimination. *Id.* at 256, 101 S.Ct. at 1095. In sum, the prima facie showing defined by *McDonnell Douglas* "raises an inference of discrimination only because we presume these acts, *if otherwise unexplained,* are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978) (emphasis added).

## II.

The majority's analysis begins with the indisputable premise that the *McDonnell Douglas* definition of a prima facie case, even as modified by this circuit for discriminatory discharge cases, cannot be applied literally in RIF cases. In particular, a plaintiff-employee who was discharged pursuant to a RIF cannot be expected to satisfy the fourth element of a prima facie case—showing that the defendant-employer sought someone to replace the plaintiff—because the plaintiff's position typically will have been eliminated in the RIF. *Ante* at 1217. *See also Tice v. Lampert Yards, Inc.,* 761 F.2d 1210, 1215 n. 5 (7th Cir.1985) (fourth element of the prima facie case "may not be required" in RIF case). Therefore, in order to provide a meaningful opportunity for an employee to maintain a discrimination suit in RIF cases, the *McDonnell Douglas* test must be modified. This fact alone is of little concern, since the Supreme Court itself has noted that "facts necessarily will vary" in discrimination cases and thus that the prima facie requirements of *McDonnell Douglas* are "not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13 (quoted in *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 253 n. 6, 101 S.Ct. at 1093 n. 6).

After recognizing the necessity of modifying the *McDonnell Douglas* formula, the majority proceeds to the ultimate question of how best to modify the formula to fit RIF cases while still maintaining its essential balance between the evidentiary burdens of the plaintiff and the defendant. The majority implicitly rejects the alternative of simply omitting the fourth element and allowing a plaintiff in a RIF case to establish a prima facie case by showing the first three elements of the *McDonnell Douglas* formula: that he was in the protected age group, that he was meeting his employer's legitimate expectations, and that he was nevertheless discharged. I agree completely with the majority's rejection of this alternative, since the discharge of an employee pursuant to a RIF does not itself give rise to any inference of discrimination, regardless of the employee's age or professional competence. *See, e.g., LaGrant v. Gulf & Western Manufacturing Co.,* 748 F.2d 1087, 1090 (6th Cir.1984) ("The mere termination of a competent em-

ployee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination."); *Equal Employment Opportunity Commission v. Western Electric Co.*, 713 F.2d 1011, 1015 (4th Cir.1983) (district court erred in permitting plaintiff to establish prima facie case by proving only first three elements).

The majority instead chooses to adopt the Fifth Circuit's formulation of the prima facie requirements for RIF cases set forth in *Williams v. General Motors Corp.*, 656 F.2d 120, 129 (5th Cir.1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982), requiring a plaintiff to "produc[e] circumstantial or direct evidence from which a factfinder might reasonably conclude that the employer intended to discriminate in making the employment decision in issue." *Ante* at 1217. The court in *Williams* further explained that in order to satisfy this requirement, "the evidence must lead the factfinder reasonably to conclude either (1) that defendant consciously refused to consider retaining or relocating a plaintiff because of his age, or (2) defendant regarded age as a negative factor in such consideration." 656 F.2d at 130. Thus, under the *Williams* formulation, a plaintiff cannot establish a prima facie case merely by eliminating the most common legitimate reasons for the discharge, or by raising an inference that the employer's actions—if unexplained—were the result of discrimination. Rather, the plaintiff must provide affirmative evidence sufficient to lead a factfinder to *"conclude,"* not merely infer or presume, that the employer consciously intended to discriminate. Applying this standard, the majority concludes that the plaintiff in this case failed to establish a prima facie case because he "provided no evidence, direct or circumstantial, that age in any way entered into the decision to terminate him." *Ante* at 1217.

By significantly increasing the plaintiff's prima facie burden in ADEA cases involving RIFs, the *Williams* approach upsets the delicate balance in burdens of proof that was struck by the Supreme Court in *McDonnell Douglas*. First, the *Williams*

test threatens to undermine the function of *McDonnell Douglas* in providing plaintiffs with a meaningful opportunity to litigate their discrimination claims. In essence, as one commentator has persuasively argued in rejecting the *Williams* test, the "practical result" of applying the test

is that in many, if not most, layoff situations the plaintiff simply will be unable to establish a prima facie case because evidence of actual age animus is rarely available, and unless there is a significant number of persons laid off any statistical data may be inherently unreliable. The defendant thus will not be required to articulate any reason for the treatment of the older plaintiff. Obviously, the absence of any articulated reason means that the laid-off older worker will be effectively deprived of any ability to focus the issue by challenging the existence, legitimacy, or uniform application of the reason.

Player, *Proof of Disparate Treatment under the Age Discrimination in Employment Act: Variations on a Title VII Theme*, 17 Ga.L.Rev. 621, 639 (1983) (footnote omitted). *Cf. Mason v. Continental Illinois National Bank*, 704 F.2d 361, 367 (7th Cir.1983) (Cudahy, J., concurring) ("Racial discrimination is frequently so difficult a phenomenon to prove or disprove that drifting from the settled landmarks, such as *McDonnell Douglas*, may be fraught with danger.").

This deviation from standard prima facie case requirements might be justified if additional evidence from the plaintiff was necessary to raise even an inference of age discrimination in RIF cases, or if the additional evidence was required in order to protect defendants from having to litigate clearly baseless claims. When one considers the kinds of discrimination claims that arise from RIFs, however, it becomes apparent that no such deviation is necessary. A plaintiff who brings an age discrimination suit after being discharged pursuant to a RIF generally does not challenge the RIF itself, but instead challenges the fact that younger employees were treated more fa-

vorably in the RIF. A plaintiff in a RIF situation, for example, typically will allege that the employer retained younger employees who continued to perform either work that the plaintiff had performed, or work for which the plaintiff was qualified, after the plaintiff's discharge.

An employer's retention of a younger employee either in the same job as the discharged plaintiff or in another job for which the plaintiff was also qualified gives rise to an inference of discrimination that is no weaker than the well-recognized inference created when an employer discharges an employee who is performing adequately and then seeks and/or obtains a replacement. While it is entirely possible, of course, that the employer in a RIF case will have decided to retain younger employees based on an evaluation of their qualifications as compared with those of the plaintiff, it is just as possible that the employer in a normal discharge case will have chosen to seek a replacement for the plaintiff because the employer believed or knew that someone else would be even better qualified than the plaintiff in some respect. In either case, the employer can rebut the plaintiff's prima facie showing by presenting some evidence to explain the legitimate reasons for its conduct. *See Davis v. Weidner,* 596 F.2d 726, 730 (7th Cir.1979) ("It seems more sensible to require the employer, in his rebuttal to the complainant's case, to offer his justification for his employment decision, rather than to force the complainant to refute hypothetical reasons why the employer might have found him relatively less qualified.").

Furthermore, two very recent decisions in this circuit that have dealt with ADEA claims by plaintiffs who were discharged pursuant to RIFs reveal that this court has not yet embraced the *Williams* test. *See Tice v. Lampert Yards, Inc.,* 761 F.2d 1210 (7th Cir.1985); *Parker v. Federal National Mortgage Association,* 741 F.2d 975 (7th Cir.1984). In *Tice,* the plaintiff alleged that he was replaced by a younger employee after he was discharged pursuant to a RIF based on the closing of one of the defendant's millshop operations. 761 F.2d

at 1214. The court expressed substantial doubt concerning whether the evidence supported the plaintiff's allegation, but ultimately concluded that even if the plaintiff had established a prima facie case by proving that he was replaced by a younger employee, the defendant nevertheless had "offered a valid justification" for the plaintiff's discharge. *Id.* at 1215. In a footnote, the court stated that the element of replacement "may not be required" for a prima facie case in a RIF case, and cited *Williams* for this proposition. *Id.* at 1215 n. 5. The rationale adopted in *Tice,* however, made it unnecessary to determine the nature of a plaintiff's prima facie burden in a RIF case.

In *Parker,* on the other hand, the court affirmatively decided that the plaintiff had established a prima facie case based on his discharge pursuant to a RIF that eliminated the plaintiff's job position where the evidence showed that he was within the protected age group, that he "was a competent and respected" employee, and that several younger employees who had held the same position as the plaintiff were permitted to transfer into new positions for which the plaintiff was also qualified. 741 F.2d at 979. The court concluded that if the case had gone to trial, the plaintiff under these circumstances "would have had little difficulty establishing a prima facie case as defined in *McDonnell Douglas.*" *Id.* The court nonetheless affirmed a grant of summary judgment to the defendant on the grounds that the defendant had proffered legitimate reasons for discharging the plaintiff and that the plaintiff failed to show that these reasons were pretextual. *Id.* at 981. Although the opinion contains no discussion of *Williams,* the fact that *Parker* evaluates the plaintiff's prima facie case under a slightly modified version of the *McDonnell Douglas* formula rather than adopting some special formula for RIF cases raises some question about whether we should impose additional prima facie requirements on plaintiffs in RIF cases.

Two recent decisions by the Third Circuit in RIF cases, while citing generally to *Williams*, likewise hold that in order to establish a prima facie case, "[a] plaintiff alleging a discriminatory layoff need show only that he was laid off from a job for which he was qualified while others not in the protected class were treated more favorably." *Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 .F.2d 1393, 1395 (3d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984); *Massarsky v. General Motors Corp.*, 706 F.2d 111, 118 (3d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). In both *Duffy* and *Massarsky*, the court held that the plaintiff has established a prima facie case by showing that he was discharged while a younger employee who performed the same job was retained. *Duffy*, 738 F.2d at 1395 n. 2; *Massarsky*, 706 F.2d at 118.

In line with these authorities, rather than employing the *Williams* approach adopted by the majority, I would allow a plaintiff in a RIF case to establish a prima facie case of age discrimination by showing that he was in the protected age group, that he was performing according to his employer's legitimate expectations, and that he was discharged while younger employees either were retained to perform the plaintiff's job or permitted to transfer into some other job for which the plaintiff was qualified.[1] Like the *McDonnell Douglas* formula, this general prima facie standard for analyzing RIF cases will not apply in its literal terms to all such cases, but rather will likely have to be modified to fit the widely varying fact situations in which age discrimination claims arise. Nevertheless, I believe that the application of this standard or some variant thereof will better serve the policies underlying *McDonnell Douglas* than the application of a formula that—like *Williams*—requires a plaintiff as part of his prima facie case to prove a defendant's discriminatory intent directly.

### III.

Under the standard that I have described, the plaintiff in this case appears to have established a prima facie case of age discrimination. In its brief to this court, the defendant argues to the contrary solely on the ground that the plaintiff failed to show that he was replaced by a younger employee or alternatively that he failed to satisfy the *Williams* test. While the plaintiff may not have been fully "replaced" by another employee, the plaintiff's supervisor Richard Killeen admitted in his deposition that the work plaintiff was performing at the time of his discharge was taken over primarily by Paul Artwohl, who was twenty-nine years old. The defendant's retention of Artwohl under these circumstances seems to complete a prima facie case.

Notwithstanding the plaintiff's prima facie case, the defendant has more than met its burden of providing a legitimate justification for the discharge, as the majority opinion thoroughly demonstrates. The burden then shifted to the plaintiff to show that this justification was a pretext, which the plaintiff failed to do. Even though the district court granted summary judgment based on the plaintiff's failure to prove a prima facie case, we can affirm if the defendant provided a legitimate reason that the plaintiff failed to show was pretextual. *See McCluney v. Jos. Schlitz Brewing Co.*, 728 F.2d 924, 926 (7th Cir.1984). *See also Klein v. Trustees of Indiana University*, 766 F.2d 275, 282 (7th Cir.1985) (where no issue of material fact exists, summary judgment appropriate on question of pretext).

I therefore concur in the judgment.

---

**1.** Implicit in this formula is the requirement that some job must actually have been available at the time of the plaintiff's discharge; the ADEA does not require an employer to create a job in order to accommodate employees within the protected age group. *Tice,* 761 F.2d at 1217–18; *Trembath v. St. Regis Paper Co.,* 753 F.2d 603, 604 (7th Cir.1985).