Eneas D'AQUINO, Plaintiff,

v.

CITICORP/DINER'S CLUB INC., Defendant.

No. 90 C 1087.

United States District Court, N.D. Illinois, E.D.

Jan. 14, 1991.

See also 750 F.Supp. 960.

Alan Rhine, Chicago, Ill., for plaintiff.

Richard E. Lieberman, Shelly R. Pagac, Ross & Hardies, Chicago, Ill., for defendant.

ORDER

BUA, District Judge.

Plaintiff Eneas D'Aquino brings an age discrimination suit under the Age Discrimi-

nation in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The Act is intended, in part, to prohibit arbitrary age discrimination in employment. 29 U.S.C. § 621(b). Because plaintiff cannot show that defendant Citicorp/Diner's Club Inc. engaged in discrimination, discrimination which had age as a determining factor, defendant's motion for summary judgment is granted.

## FACTS

D'Aquino's relationship with Citicorp/Diner's Club Inc. has been a relatively long and uneventful one. D'Aquino began working for what was then Diner's Club, now Citicorp/Diner's Club ("Citicorp"), in 1971. He was 46 years old. Throughout the early portion of his career, in 1973, 1975, 1980, D'Aquino consistently received average ratings in his informal reviews. Along with the reviews came yearly salary increases. These increases were generally within the 2–4% range. In the late 1970's, D'Aquino was promoted to director of Sales Administration. When Diner's Club was acquired by Citicorp in 1981, D'Aquino continued in essentially the same position. (D'Aquino Deposition at 20.) His salary also remained constant. (*Id.* at 21–22.) The difference was that D'Aquino now reported to supervisors.

Citicorp reinstituted employee reviews in 1983. D'Aquino received a favorable review in 1983, accompanied by a salary increase. In 1985, D'Aquino turned 60 years of age. Around the time of his birthday, D'Aquino became a financial manager. A few months later, he returned to his previous position because a vice president felt that D'Aquino was not suitable for the financial manager position. Upon resuming his former position, D'Aquino worked mainly on project tasks. His next review occurred in 1986. That review rated D'Aquino's performance as marginal. As a result, D'Aquino was not given a raise during 1985–1986. D'Aquino challenged the evaluation and submitted written rebuttals. In his next review, D'Aquino was rated average. He received a salary increase for that year, 1987, and a retroactive raise for 1985. D'Aquino characterizes these raises as minimum. (*Id.* at 42.) During this time,

D'Aquino remained in the same grade-level position. (*Id.*)

As a result of D'Aquino's continued challenge to his 1986 review, D'Aquino sat down with a senior financial officer to discuss his options within the company. One of the choices available to D'Aquino was an optional separation agreement. D'Aquino considered the option, but eventually refused it when a compromise could not be reached on a compensation amount.

In 1988, D'Aquino indicated interest in a position opening for financial manager of membership acquisitions. However, he never actually applied for the job. (*Id.* at 77.) D'Aquino also expressed interest in two vice president jobs—product development and promotions. He applied for the product development position, but was not given the job. His 1988 and 1989 appraisals again rated his performance as average.

In 1990, D'Aquino filed this suit. His complaint alleges age discrimination in a number of areas. D'Aquino claims that, since he turned 60 years of age, he has been (1) given unfavorable evaluations; (2) assigned to difficult situations; (3) given minimal salary increases; (4) prevented from receiving promotions; and (5) presented with a separation agreement, all on account of his age. He alleges that these conditions are in violation of 29 U.S.C. § 623(a)(1), which makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Citicorp denies these claims and moves for summary judgment.

## ANALYSIS

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56, Notes of Advisory Committee on Rules. To do so, the court must determine whether any genuine issue of material fact exists and whether a decision

can be reached as a matter of law. Fed.R. Civ.P. 56(c).

In an age discrimination suit, plaintiff bears the burden at all times of proving that defendant engaged in discrimination based upon age. D'Aquino must prove that he "suffered a *materially adverse* change in the terms or conditions of [his] employment ..." (*Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 885 (7th Cir.1989)) and that he would not have received such adverse treatment *but for* his age. *Grohs v. Gold Bond Bldg. Products, Div. of Nat'l Gypsum Co.*, 859 F.2d 1283, 1285 (7th Cir.1988), *cert. denied*, 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 405 (1989). Direct or circumstantial evidence will sustain this burden of proof. As D'Aquino has not presented the court with direct evidence, he must rely on circumstantial evidence. First, D'Aquino must establish a prima facie case of age discrimination. Accordingly, he must show (1) that he belongs to a protected class (age 40 or over); (2) that his job performance was sufficient to meet the legitimate expectations of Citicorp; (3) that he received adverse treatment in spite of his performance; and (4) that Citicorp sought a younger person as a replacement for him. *Matthews v. Allis–Chalmers*, 769 F.2d 1215, 1217 (7th Cir.1985). If D'Aquino is able to establish a prima facie case, the burden then shifts to Citicorp to set forth a legitimate, non-discriminatory reason for the adverse treatment. *Id.* Should Citicorp articulate such a reason, D'Aquino must prove that the employer's reason was purely pretextual. *Id.*

An examination of the facts and law leads the court to conclude that D'Aquino would not succeed if his case were brought before a jury. In fact, for the majority of his claims, D'Aquino does not even succeed in establishing a prima facie case. While D'Aquino can satisfactorily show the first two elements in such an analysis, he falls short in establishing the third element—adverse treatment.[1]

### I. Evaluations

D'Aquino begins his litany of discrimination claims with allegations of "unfavorable evaluations." This broad-sweeping claim is rather inconsistent with the court's findings. The court has determined that D'Aquino's performance, as recorded in his evaluations, consistently met the legitimate expectations of Citicorp. Therefore, it would be difficult to characterize evaluations of his performance as "unfavorable." The one evaluation worthy of attention is D'Aquino's 1986 performance review, which rates his performance below that of previous years. Even assuming that this review is a product of adverse treatment, Citicorp gives an adequate, non-discriminatory reason for the evaluation. First, these evaluations are well-supported by observations and comments of the two supervisors under whom D'Aquino worked. Second, the 1986 performance rating appears to be based on a combination of the problems expressed in previous reviews. Comments accompanying the 1986 performance rating include the following: Mr. D'Aquino's "skill and knowledge level does not compare to that of [his employee] level...." He "perform[s] well in highly structured and closely supervised environments." He "need[s] to improve [his] sense of priorities." "Listening and understanding directions is one of [his] biggest shortcomings." (Defendant's Motion for Summary Judgment, Exhibit 5 at 6, 7, 10.)

D'Aquino's earlier reviews echo many of the same comments. In 1975, D'Aquino's appraisal reported that "Mr. D'Aquino does not grasp complex matters easily." (*Id,* Exhibit 2 at 2.) His 1983 performance review concludes that "[h]e had some difficul-

---

**1.** D'Aquino has no difficulty showing that he belongs to a protected class. He was over 40 years of age when he joined Diner's Club and his claims primarily deal with events occurring after he turned 60 years of age. D'Aquino can also establish that he met Citicorp's legitimate performance expectations. D'Aquino has consistently received average ratings throughout his tenure with Citicorp/Diner's Club, with the exception of his rating in 1986. Some companies may hope that their employees' performances rank above average. Citicorp, though, seems satisfied with D'Aquino's ratings since he also has consistently received salary increases throughout his service.

ties in adapting to and accepting ... changes [in the Citicorp environment] [but] these past judgments are inappropriate as the business activity has evolved to a more planned environment." (*Id.*, Exhibit 4 at 1.) His 1973 appraisal reports that "[d]efinite improvement is needed in volume of personal work produced." (*Id.*, Exhibit 1 at 2.) His informal review of 1980 states that "Mr. D'Aquino needs to improve upon his communicative skills." (*Id.*, Exhibit 3 at 2.) The presence of these comments in prior evaluations does much to diffuse D'Aquino's claim.

Further, D'Aquino does not challenge the substance of the evaluations or present proof that the evaluations are merely a pretext. D'Aquino only provides convoluted arguments that persuade the court more of the legitimacy of defendant's reasons than the merit of plaintiff's discrimination claim. As a result, the court finds no evidence of age discrimination at work in D'Aquino's performance reviews.

## II. Work Assignments

■ The next in D'Aquino's discrimination claims focuses on his work assignments. D'Aquino alleges that, since he turned 60 years of age, he "has been assigned duties in areas where his predecessor had failed to adequately perform their duties, leaving a difficult situation." (Complaint at 3.) These assignments, though, do not strike the court as "adverse treatment." The court gathers from D'Aquino's deposition that his primary gripe with Citicorp was that his position lacked sufficient authority and responsibility. (D'Aquino Deposition at 23, 29.) By placing D'Aquino in positions which required that he resolve difficult situations others could not handle, Citicorp seemed to be acquiescing to D'Aquino's demands.

The claim advanced by D'Aquino is also on shaky legal ground. Courts have questioned whether the ADEA should be used as a vehicle to challenge changed job responsibilities which "cause no materially significant disadvantage to an older employee." *Spring*, 865 F.2d at 885; *Frazer v. KFC Nat'l Mgmt. Co.*, 491 F.Supp. 1099,

1105 (M.D.Ga.1980), *aff'd*, 636 F.2d 313 (5th Cir.1981). D'Aquino even neglects to address the difficult work assignment claim in his summary judgment response. Therefore, the allegation fails.

## III. Salary Increases

■ D'Aquino's claim that he received minimal salary increases on account of his age presents his weightiest discrimination argument. Nevertheless, this argument also fails. D'Aquino presents the court with a picture of minimal salary increases after his 60th birthday. His salary increases of 0% in 1985 and 1986, 2.4% in 1987, and 3.3% in 1988 certainly bear no resemblance to his increases of 8%, 13%, and 6% in the period 1980–1984. D'Aquino also provides evidence that his younger coworkers' 1988 raises exceeded his salary increase. Evidence that younger persons are receiving larger salary increases, though, is by no means conclusive of age discrimination. *See Davidson v. Bd. of Governors of State Colleges and Universities for Western Illinois University*, 920 F.2d 441, 445 (7th Cir.1990) ("The law forbids employment discrimination on the basis of age; it does not require that the old be paid higher salaries than the young."); *Tagatz v. Marquette University*, 861 F.2d 1040, 1045 (7th Cir.1988) (fact that younger faculty members without tenure receive larger percentage salary increases than older tenured faculty members is not evidence of age discrimination).

And, Citicorp provides a convincing rebuttal. First, the company gives a complete picture of the general trend of D'Aquino's salary. Although D'Aquino received greater than 2% salary increases in the middle of his employment with Citicorp, company records indicate that he only received 2–4% salary increases at the beginning of his career with Diner's Club. These "minimum" increases, then, also occurred when D'Aquino was a younger man.

Second, Citicorp explains the salary increase differential by reference to its salary policy. In its reply, Citicorp delineates its policy of providing larger salary increases to workers with lower base salaries in

order to maintain comity within the same salary range. D'Aquino's deposition also contains a reference to the company's salary policy. (D'Aquino Deposition at 103.) As indicated by Citicorp's records, D'Aquino's salary exceeds his co-worker's salary by a significant amount. His lower salary increases, then, appear consistent with the company's salary policy. The court need not consider every conceivable inference which can be drawn, only those that are reasonable. *Matthews*, 769 F.2d at 1218. The court can reasonably infer that D'Aquino's increase was pursuant to a legitimate company salary policy. D'Aquino, therefore, fails to show that age discrimination affected his salary increases.

## IV. Promotions

D'Aquino claims denial of promotions as additional evidence of age discrimination. He targets four positions as ones where he was denied promotions. It is uncontested that D'Aquino did not apply for three of the four jobs. In order "[t]o establish a claim of age discrimination as a matter of law [based on denial of promotion for these positions], [he] would have had to apply for the positions." *Glismann v. AT & T Technologies, Inc.*, 827 F.2d 262, 268 (8th Cir.1987). To circumvent this requirement, D'Aquino argues that he was constructively denied a promotion. He contends that he did not apply for a position as financial manager for membership acquisition because he believed that his evaluations prevented him from applying. While ingenious, D'Aquino does not state a cause of action. Even if the court were to fashion a cause of action by looking to the area of constructive discharge, D'Aquino would fall short. Under the constructive discharge standard as applied to a theory of constructive denial of promotion, the court would need to find that a reasonable person in D'Aquino's position would have felt that he was prevented from applying for the promotion position. *See Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986). From the facts disclosed in D'Aquino's deposition, it is difficult to see how a reasonable person would have felt unable to apply for the position. Although D'Aquino had just received a marginal rating, the bulk of his prior reviews had been satisfactory. In addition, D'Aquino's manager sent D'Aquino a memo which made it clear that D'Aquino was eligible to apply for the position. (D'Aquino deposition at 79.) Further, human resources sent D'Aquino a memo describing the method by which he could apply for the job. (*Id.* at 77.) Seemingly, the company directed its efforts towards demonstrating to D'Aquino that he was eligible, rather than ineligible, for the post.

D'Aquino did apply for the position as vice president of product development. For D'Aquino to prove that he was denied a promotion to this position based on age, he must show that he was a member of a protected class; he applied for a position for which he was qualified; and he was denied a promotion which was given to a younger man. *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 674 (9th Cir.1988). Here, D'Aquino's claim fails because he cannot show that he was qualified for the product development position. The qualifications for the position included a bachelor of arts in business, preferably an advanced degree, seven or more years in the marketing area, strategic planning and new product development experience. D'Aquino does not have a masters degree. At most, he has six years of limited marketing experience from positions he held earlier in his career. And, D'Aquino was not in the appropriate employment level to make the move to a vice president position. D'Aquino does not contest that company policy only allows employees to be considered for promotions one level above their current position. (*Id.* at 7–8.) D'Aquino is in an S-level position; the vice president position was a U-level spot. Based on these facts, the court concludes that D'Aquino was not denied the position based on his age.

## V. Separation Agreement

The last in D'Aquino's litany of age discrimination claims relates to a separation agreement Citicorp offered him. The

offer of a separation or early retirement agreement is not evidence of age discrimination. Such an offer only becomes discrimination when the employee must choose between early retirement or an employment situation that is in violation of the ADEA. *Henn v. Nat'l Geographic Society*, 819 F.2d 824, 829 (7th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987); *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 467 (10th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990).

In D'Aquino's case, the separation agreement was proffered as one of three options to resolve his situation within the company. D'Aquino himself considered the agreement a compromise to seek "a solution, to make up for whatever wrongs were done." (D'Aquino Deposition at 94.) D'Aquino contemplated the option, but discarded it when agreement could not be reached on a compensation amount. (*Id.* at 94–97). Once having rejected the agreement, D'Aquino does not point to any difference in treatment within the company. Certainly he does not indicate any difference in treatment which reached the level of a violation of the ADEA. This ground, therefore, is also inadequate as a basis for discrimination.

## CONCLUSION

"Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment whenever 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.' No genuine issue of material fact exists 'unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.' *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 [106 S.Ct. 2505, 2511, 91 L.Ed.2d 202] (1986)" *Harbin v. Burlington Northern Railroad Co.*, 921 F.2d 129, 130 (7th Cir.1990). As clearly shown by the court's review of the issues and the law applicable to this case, plaintiff D'Aquino has not demonstrated that sufficient evidence exists upon which a jury could return a verdict in his favor. Accord-

ingly, the court grants Citicorp's motion for summary judgment.

IT IS SO ORDERED.