Melvin J. GLISMANN, Willis C. Sturgeon, James W. Detmers, Karl W. Holz, Joseph Leyendecker, Leslie A. Irvine, John Schmidt, and Robert L. Simons, Appellants,

v.

AT & T TECHNOLOGIES, INC., a corporation, formerly known as Western Electric Company, Inc., Appellee.

No. 86–1718.

United States Court of Appeals, Eighth Circuit.

Submitted March 10, 1987.

Decided May 4, 1987.

Clyde A. Christian, Omaha, Neb., for appellants.

David W. Carpenter, Chicago, Ill., for appellee.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and HANSON,* Senior District Judge.

HANSON, Senior District Judge.

This is an action under the Age Discrimination in Employment Act (ADEA). Appellants claim that AT & T Technologies refused to transfer them into production jobs at the Omaha Works plant in February 1983, and failed to recall them as production workers during a subsequent plant expansion because they were "pension eligible." A jury found that appellants had not been discriminated against because of their ages, and appellants now appeal asserting that the district court[1] should have set aside the jury's verdict. We affirm the decision of the district court.

## I.

Appellants are eight former security guards at AT & T Technologies who alleged they were discriminated against because of their ages. In 1982, Technologies' Omaha Works plant employed a large number of production workers, who were covered by a collective bargaining agreement, and a 24–member in-house security force, who were not covered by a collective bargaining agreement. After conducting a study of cost-saving mechanisms at the plant, the plant manager determined that approximately $500,000 per year could be saved by eliminating the plant's in-house security guard force and obtaining the same services from Pinkerton's, Inc., a private security guard firm. On February 11, 1983, Technologies disbanded its in-house security guard force in favor of the Pinkerton's services.

Not all of the 24 guards were discharged on February 11, 1983. Eleven of the twenty-four guards had prior plant experience and were transferred into the plant as production workers, although two of the men (Rick Palmer and William Lorenz) were immediately laid off from their plant production jobs for lack of work. Of the remaining nine guards who were transferred into the plant and not laid off, seven employees were within the age guidelines provided by the ADEA. Both Palmer and Lorenz were recalled six months later pursuant to the production workers' collective bargaining agreement which provided for automatic recall when available work existed.

Another guard not terminated in February 1983 (G. Dokmonovich, age 52) was given an office job for eleven months. Dokmonovich received this temporary position in order to comply with Technologies' corporate policy prohibiting involuntary layoffs of employees who are within twelve months of eligibility for service pensions.

---

* The Honorable William C. Hanson, United States Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska.

Dokmonovich in February 1983 was eleven months away from qualifying for his service pension. He was terminated in January 1984 when he became eligible for a pension. Neither Dokmonovich nor any other guard without prior plant service could have been transferred into the plant or given a permanent position as a production worker in February 1983 because Technologies' production worker collective bargaining agreement provided that transfer of employees who lacked prior plant service was impermissible when the plant was in a "surplus condition." A surplus condition existed whenever there were production workers on layoff status. In February 1983, the plant was in layoff status.

The twelve remaining guards were, therefore, discharged. None had prior plant experience. None was within twelve months of qualifying for service pensions. One guard (James Peroutka) had 26 years of service, and was within 14 months of eligibility for a pension, thereby just missing qualification for retention under Technologies' policy. Technologies' assistant plant manager, Graham Seiter, was particularly concerned with discharging Peroutka and thus promised to notify him once Technologies began hiring production workers after all the laid off production workers had been recalled.

Appellants are eight of the twelve guards who were discharged. Each was eligible for a service pension.[2] The appellants began drawing pensions of between $490 and $590 per month at the time of their discharge, and were granted full medical and other employee benefits for life. Furthermore, each of the discharged guards received a severance payment of between $22,000 and $30,000. Each of the appellants was told that he could apply for a job at Pinkerton's. The starting wage at Pinkerton's was $5.25 per hour, compared with the wage they had been receiving as guards of between $9.00 and $11.00 per hour. All but one of the appellants refused to apply for jobs at Pinkerton's.[3]

In late summer and early fall of 1983 the plant began expanding again. Technologies first recalled production workers who had been laid off less than two years. Lorenz and Palmer were recalled at this time. Next, Technologies sent some 500 letters inviting all former production workers who had been laid off more than two years to apply for job openings. Then, Technologies extensively advertised in newspapers and on television job openings at the Omaha Works plant. During this time Technologies hired 175 persons without prior plant experience who applied for production jobs. In June 1983 Peroutka was sent a letter specifically inviting him to apply for a job. He was hired as a Grade 32 production worker on August 1, 1983.

In January 1984 two security guards from Technologies' Hawthorne plant in Illinois, Charles Stanley and Raymond Mason, received notices of job openings at the Omaha Works plant. Stanley and Mason bid for and were hired for production jobs at the Omaha Works. They had been union members at the Hawthorne plant and were permitted to bid on production jobs at the Omaha Works pursuant to an agreement between Technologies and their union at the time the Hawthorne plant was closed.

In May 1984 Technologies offered each of the appellants a Grade 32 production job at the Omaha Works beginning on June 1, 1984.[4] As part of the offer made by Technologies, any of the appellants who had accepted employment would not have had to pay back his severance payment, and his pension would not have been reduced. None of the appellants accepted Technologies' offer.

Appellants had filed charges with the EEOC on January 18, 1983. In May 1983

---

**2.** To qualify for a service pension, an employee's age, when added to his years of service, must equal at least 75.

**3.** The one appellant who did apply for a job with Pinkerton's, James Detmers, failed Pinkerton's employment test and was not hired. One

other laid off guard who is not an appellant in this action, James Peroutka, did receive a job with Pinkerton's.

**4.** Trial of the appellants' ADEA claim in federal court was to begin in September 1984.

they filed their complaint in federal court. Their complaint, subsequent amended complaint, and the pretrial order asserted the sole ADEA issue was whether they had been wrongfully terminated in February 1983 because of their ages.[5]

At the close of the evidence, the district court instructed the jury that the plaintiffs were challenging the February 1983 termination, and were challenging the fact that Technologies had failed to give them the same invitation to apply for a job that had been extended to Peroutka. The district court refused to instruct the jury that appellants were challenging any discrimination between themselves and the other 175 persons without prior plant experience who were hired by Technologies, reasoning that these 175 new claims were barred by the pretrial order. In addition, the district court held that there was no evidence of age discrimination with respect to these 175 persons because these new employees had responded to newspaper advertisements just as the appellants could have. The district court did instruct the jury that appellants were challenging any "adverse employment decision."

The jury returned with a defense verdict, finding that the appellants had not been discriminated against because of their ages. Subsequently, the district court denied appellants' post-trial motions for judgment notwithstanding the verdict and a new trial. This appeal followed.

## II.

■ To recover for age discrimination, the plaintiff has the initial burden of establishing a prima facie case of age discrimination. When such a showing has been made, the burden of production shifts to the employer to produce evidence showing that the actions were taken for legitimate, non-discriminatory reasons. If the employer makes such a showing, the ultimate burden of persuasion lies with the plaintiff to show that age was a determining factor in the actions taken by the employer. *Jorgensen v. Modern Woodmen of America,* 761 F.2d 502, 504 (8th Cir.1985). In carry-

ing this ultimate burden of persuasion, the plaintiff can "prove his case by showing either direct evidence of discrimination or evidence that the reasons given for the adverse action are a pretext to cloak the discriminatory motive." *Dace v. ACF Industries, Inc.,* 722 F.2d 374, 377 (8th Cir. 1983) (citing *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)).

Because the present case has been tried fully, we focus our inquiry on the ultimate question presented in an age discrimination case: Were the actions undertaken by the defendant discriminatory? *See United States Postal Service v. Aikens,* 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Jorgensen,* 761 F.2d at 505. The jury in this case found that Technologies' actions were not discriminatory. In *Dace v. ACF Industries, supra,* we made clear that "a directed verdict should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." *Dace,* 722 F.2d at 375 (quoting *Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co.,* 523 F.2d 833, 836 (8th Cir.1975)). We underscored that we must view the evidence most favorably to the prevailing party and "the case may be taken from the jury only if no rational jury could find against the moving party on the evidence so viewed." *Id.* at 376; *see also Gilkerson v. Toastmaster, Inc.,* 770 F.2d 133, 136 (8th Cir.1985) (for entry of judgment notwithstanding the verdict to be proper, evidence must point all one way and be susceptible of no reasonable inferences sustaining the position of the nonmoving party).

■ Appellants were terminated in February 1983 because the guard force in which they worked was disbanded, and because they were not eligible to be transferred into production jobs in the plant or otherwise retained under the corporate policy extended to Dokmonovich. The jury could therefore reasonably conclude that

5. Appellants also asserted a claim premised on ERISA, which is not part of this appeal.

the appellants were not discharged because of their ages.

Appellants initially assert that economic considerations cannot justify termination of only pension-eligible members of the work force. However, economic considerations were not the basis for their terminations. Rather, economic considerations were the basis only for the decision to disband the entire in-house security guard force, without regard to the pension eligibility of specific employees. The decision to terminate each appellant was based on whether each had prior production experience, a consideration applied irrespective of age or pension eligibility.

Appellants also argue that Technologies cannot rely upon a collective bargaining agreement which as applied is in violation of the ADEA. At trial, appellants expressly declined to challenge the provisions of the collective bargaining agreement. The district court thus specifically instructed the jury that "plaintiffs do not contend that defendant's decision * * * to comply with its union contract was unlawful or gives rise to any age discrimination claim." Because appellants failed to object to this jury instruction, they waived the right to appeal it as error. Fed.R.Civ.P. 51. In any case, it cannot be said that the collective bargaining agreement made age or pension eligibility a factor in a transfer decision. The provision applies to all employees "who were not formerly in the bargaining unit," without regard to their ages or pension eligibility. That seven of the eleven guards who were transferred into production jobs were in the class of employees protected by the ADEA makes it clear that the collective bargaining agreement did not classify on the basis of age or pension eligibility status and does not violate the ADEA.

Appellants also assert that the treatment accorded Dokmonovich serves as proof that Technologies discriminated against those employees who were pension-eligible. Dokmonovich had been assigned duties in Technologies' headquarters until he became pension-eligible. The simple answer to appellants' claim with regard to Dokmonovich is that they were already pension-eligible, and therefore the corporate policy protecting Dokmonovich did not apply to them.[6] Each of the appellants had already been employed until he was eligible for his pension. Therefore, the jury could reasonably conclude that retention of Dokmonovich until he was pension-eligible was not evidence of age discrimination.

We conclude that there was sufficient evidence by which the jury could find the reasons given for the appellants' termination were not a pretext for a discriminatory motive.

■ Appellants also argue that there was other direct evidence of age discrimination in the record supporting their motion for directed verdict. Specifically, appellants claim that Seiter's trial testimony and a letter sent to their attorney by Technologies' corporate benefit headquarters provide direct evidence that Technologies discharged them because they were pension-eligible. A directed verdict and a judgment notwithstanding the verdict should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party. *Bell v. Gas Service Co.,* 778 F.2d 512, 514 (8th Cir. 1985) (citing *Dace,* 722 F.2d at 375 (8th Cir.1983)).

Seiter testified that the appellants were discharged once the guard force was disbanded because they had no return rights in the plant. The letter from Technologies' corporate benefit headquarters set forth the eligibility criteria for the appellants' pension benefits, but does not state why the appellants were terminated. The district court therefore reasonably concluded that age was not a determining factor in the decisions to terminate the appellants, and correctly denied their motions for directed verdict and judgment notwithstanding the verdict.

6. Appellants did not contend at trial that Technologies' corporate policy violated the ADEA, so any claim based on the corporate policy being in violation of the ADEA has been waived.

### III.

■ Appellants assert that Technologies discriminated against them because of their ages in failing to invite them during 1983 to apply for jobs as production workers. They point to the treatment accorded Peroutka as evidence of discrimination with regard to recall of terminated pension-eligible guards. Seiter testified that he sent Peroutka a letter inviting him to apply for a job as a production worker in order to give this 26–year employee an opportunity to qualify for his service pension. The letter did not offer Peroutka a job. It advised him that the Omaha Works would have production job openings in the future and that he could apply for one if he so chose. Appellants had the same opportunity to apply for a job, but did not. Moreover, in May 1984 Technologies sent appellants a letter offering each of them a production job in the plant, an offer which was orally renewed during a meeting held a month later. The jury could reasonably find that appellants were not prejudiced because they had not received a letter similar to the one sent Peroutka. The jury could also reasonably infer from the appellants' rejection of the job offers that they were no longer interested in production jobs at the Omaha Works.

Furthermore, the jury could reasonably find that each appellant suffered no damage and in fact was better off by not becoming a production worker in August 1983 when Peroutka was hired. Each appellant's layoff allowance and pension payments exceeded the amount that Peroutka earned as a production worker from August 1, 1983 through May 1984. If appellants had been given jobs similar to that given Peroutka in August 1983, they would have had to pay back their layoff allowances (as Peroutka did).

Appellants now also argue that it was age discrimination for Technologies to hire 175 new production workers during 1983 and 1984. They assert that the district court erred in refusing to instruct the jury on this claim, and, alternatively, that this evidence shows age discrimination as a matter of law. Appellants had proposed at trial the jury be instructed that it was age discrimination for Technologies to fail "to invite [them] back to work or otherwise offer employment to them at any time in 1983 or 1984." The district court denied this request, instead instructing the jury only as to the comparison between Peroutka and appellants.

■ Appellants had not raised any challenge to the 175 hirings in their EEOC charge, their complaint, amended complaint, or the pretrial order. Under Fed.R. Civ.P. 16(e), the pretrial order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." Because the pretrial order measures the dimensions of a lawsuit, a party may not offer evidence or advance theories during trial which violate the terms of a pretrial order. *See Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1335 (8th Cir.1985) (citing *United States v. First National Bank,* 652 F.2d 882, 886 (9th Cir. 1981)). A pretrial order will be modified only if there is no substantial injury or prejudice to the opponent. *Hale,* 756 F.2d at 1332. Thus, the district court committed no reversible error in limiting the issues which it presented to the jury.

■ Even if there were reason to believe that failure to modify the pretrial order was manifest injustice, there is no evidentiary basis for the proposed instruction. Technologies did not send an invitation to apply for employment to anyone other than Peroutka. To the contrary, it advertised generally in newspapers and on television. The district court correctly held that the advertisements were "available to everybody," so appellants had the same opportunity to apply for jobs as did the other 175 applicants. As a result, there was no evidence of age discrimination with regard to the 175 new hirings.

■ Appellants also argue that the transfer of Stanley and Mason from Technologies' Hawthorne plant to the Omaha Works was age discrimination as a matter of law in that each was a former guard, was younger than the appellants, and had no prior experience as production workers.

Stanley and Mason applied for production jobs at the Omaha Works. Appellants did not apply. To establish a claim of age discrimination as a matter of law, appellants would have had to apply for the positions. *See DeHues v. Western Electric Co., Inc.,* 710 F.2d 1344, 1348 (8th Cir.1983) (per curiam); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The district court therefore was correct in holding that there was no age discrimination in the treatment accorded Stanley and Mason.

### IV.

After thoroughly reviewing the record, we conclude that the district court's finding of no discrimination is not clearly erroneous. Accordingly, the district court's judgment is affirmed.