849 F.2d 608
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William Vernon ALLMAN and Bernard W. Cleveland, Plaintiffs-Appellants,
v.
The EASTERN CO., d/b/a Pattin Manufacturing Co., Defendant-Appellee.
 No. 87-3322.
 United States Court of Appeals, Sixth Circuit.
 June 14, 1988.
 
 Before KEITH, WELLFORD and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is a consolidated age discrimination case in which the plaintiffs, William Allman and Bernard Cleveland, claim that the defendant, which does business as Pattin Manufacturing Co., terminated their employment in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 621 et seq. Following a bench trial the district court entered judgment in favor of defendant Pattin on the ground that the plaintiffs had failed to establish a prima facie case of discrimination. The court also found that the defendant had articulated a "reasonable nondiscriminatory reason" for discharging both plaintiffs. We cannot say that these findings were clearly erroneous, and we shall therefore affirm the district court's judgment.
 
 
 2
 * Pattin Manufacturing Co. is one of seven operating divisions of The Eastern Co., a publicly held corporation. Pattin manufactures and sells mine roof bolts and related products used in the coalmining industry. The company operates manufacturing plants in Marietta, Ohio; Marion, Illinois; and Clearfield, Utah. It also has a steel warehouse in Marietta.
 
 
 3
 In 1982 the coal industry experienced a business recession that adversely affected Pattin's sales and profits. The company suffered substantial losses during the last three quarters of 1982. In 1983 the Marietta plant operations alone lost nearly $100 million. During this period management began to reduce and restructure the work force; both hourly and salaried employees were laid off or discharged.
 
 
 4
 Plaintiff William V. Allman, who was born on January 15, 1923, was hired by Pattin as office manager of the Marietta facility on December 30, 1968. On July 16, 1979, Mr. Allman was transferred, with no change in salary, to the position of purchasing agent. As purchasing agent he was responsible for buying the materials used in the manufacturing process at all three manufacturing plants. Mr. Allman's employment was terminated on October 29, 1982, when Pattin's managing director, George Vass, eliminated the position of purchasing agent and assigned purchasing responsibility for each plant to the plant's manager.
 
 
 5
 Plaintiff Bernard W. Cleveland, who was born on April 1, 1927, began working for Pattin on April 15, 1953. He started as a laborer in the Marietta manufacturing plant. In July of 1974 he became a production foreman, and he worked in that capacity until February of 1981; at that time he was promoted to superintendent of Pattin's Marion plant. Mr. Cleveland evidently did not fulfill his employer's expectations as plant superintendent, and in April of 1981 he became an inventory control clerk. Subsequently, on September 1, 1981, Mr. Cleveland became superintendent of the Marietta steel warehouse. On February 18, 1983, his employment with Pattin was terminated. He was replaced by Richard Poole, a 49-year-old employee whose position as inside salesman had been eliminated as part of the restructuring process.
 
 
 6
 The plaintiffs filed timely age-discrimination charges with the EEOC and with the Ohio Civil Rights Commission, thereby satisfying the procedural requirements of 29 U.S.C. Secs. 626(d)(2) and 633(b); the plaintiffs then brought separate actions against Pattin in federal court. Their complaints alleged violations of the ADEA and set forth pendent state claims sounding in both contract and tort. The two actions were consolidated prior to trial.
 
 
 7
 The district court, trying the case without a jury, entered judgment for defendant Pattin on all counts. On appeal the plaintiffs challenge only the district court's rejection of their ADEA claim.
 
 II
 
 8
 Applying the "McDonnell-Douglas" approach, the district court held that neither plaintiff had established a prima facie case. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981), quoting McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). As to Mr. Allman, the court found that although he was a member of the protected class, was discharged, and was qualified to do the job, he was not replaced by a younger person; his job was simply eliminated. The court found that Mr. Allman failed to present evidence sufficient to create a reasonable inference that age was a determining factor in the decision to eliminate his job. As to Mr. Cleveland, the court found that although he met the four McDonnell-Douglas requirements,* there were insufficient facts to suggest age discrimination. Further, the court found that the defendant had articulated a reasonable nondiscriminatory reason for its action in replacing Mr. Cleveland.
 
 
 9
 Contending that they presented credible direct evidence of age-based animus that was sufficient to carry their burden of proof, the plaintiffs argue that the district court erred in holding that they failed to make out a prima facie case of age discrimination. The plaintiffs attach particular importance to the district court's finding of possible bias on the part of Mr. Vass. In its conclusions of law, the district court stated:
 
 
 10
 "There was some evidence of possible age based animus on the part of defendant's managing director, Mr. Vass. While most of the evidence on this point was unconvincing, Mr. Cleveland's testimony about Mr. Vass's comment on the airplane while returning from Hartford, Connecticut in 1979 had the ring of truth. On this occasion, Mr. Cleveland had accompanied Mr. Vass to inspect a machine the company was contemplating purchasing. On the return trip, Vass said, referring to machine [sic], something to the effect 'that damn thing better work' followed by the statement: 'I'm going to get rid of you older sons of bitches and you may be the first to go.' The court also tends to believe Mr. Allman's account of a statement made by Vass to the effect that it wouldn't be long until he had his own team, and 'all the old guys will be out of here.'
 
 
 11
 "The court is also disturbed by the almost ruthless nature in which Vass informed these two long term employees of their terminations."
 
 
 12
 The plaintiffs contend that the district court's statement demonstrates that they presented direct evidence of discrimination and that therefore the McDonnell-Douglas burden-shifting analysis is not applicable. In this connection they cite Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985), and Blalock v. Metals Trades, Inc., 775 F.2d 703 (6th Cir.1985).
 
 
 13
 In Blalock this court observed that "direct evidence and the McDonnell-Douglas formulation are simply different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." Id. at 707. Citing Trans World Airlines, the court noted that McDonnell-Douglas is inapplicable where the plaintiff presents direct evidence of discrimination. The Blalock court went on to hold, however, that in order to prove a violation of Title VII (and, by extension, the ADEA), a plaintiff must demonstrate by a preponderance of the evidence that the employer's decision was "more likely than not" motivated by a statutorily proscribed consideration. "Upon such proof, the employer has the burden to prove that the adverse employment action would have been taken even in the absence of the impermissible motivation, and that therefore the discriminatory animus was not the cause of the adverse employment action." Id. at 712. This burden exists regardless of whether the evidence is circumstantial or direct. Id. at 707 n. 5.
 
 
 14
 In the case at bar we can see nothing clearly erroneous in the district court's conclusion that the plaintiffs failed to show that the defendant employer's decision was "more likely than not" motivated by age-based animus. The statements by Mr. Vass occurred over three years before either of the plaintiffs was discharged. An age-related comment may "ring true" and yet be too remote in time or too insubstantial, vague, or abstract to support a judgment of age discrimination. See Chappell v. GTE Products Corp., 803 F.2d 261, 268 n. 2 (6th Cir.1986), cert. denied, 107 S.Ct. 1375 (1987). Thus in Parker v. Federal National Mortgage Ass'n, 741 F.2d 975, 980 (7th Cir.1984), the court held that an age-related comment, written three years prior to the reorganization of the defendant company, did not raise a reasonable inference of age discrimination.
 
 III
 
 15
 The plaintiffs also contend that the district court erred in finding that the defendant employer's claim of "economic necessity" was not "pretextual." The plaintiffs point to the fact that The Eastern Co. never failed to pay quarterly dividends to its stockholders, as well as the fact that Pattin gave wage increases to George Vass and other employees during its period of economic distress. Citing EEOC v. Chrysler Corp., 733 F.2d 1183, 1186 (6th Cir.1984), the plaintiffs maintain that an employer offering an "economic necessity" defense must prove that it has used the least restrictive means to effect the necessary cost savings.
 
 
 16
 The plaintiffs' contentions have no merit. The Chrysler case arose under 29 U.S.C. Sec. 623(f)(2), a statutory provision that authorizes employers to adopt and apply "bona fide" retirement or pension plans and seniority systems notwithstanding the prohibition against age discrimination. Where, as in Chrysler, there is a policy of forced early retirement in which personnel decisions are made directly on the basis of age, courts have accepted the defense of "economic necessity" only if the employer can show (1) that the necessity for drastic cost reductions is real and (2) that the forced early retirement is the "least-detrimental-alternative means available to reduce costs." Chrysler Corp., 733 F.2d at 1186.
 
 
 17
 Chrysler Corp. is inapposite here. The plaintiffs have not claimed that Pattin had a policy of forced early retirement, and Pattin has not offered any "bona fide retirement plan" defense under Sec. 623(f)(2). The statutory provision that is pertinent here, rather, is 29 U.S.C. Sec. 623(f)(1). That section permits employers to make differentiations based on "reasonable factors other than age." There is no requirement, under this provision, that the employer prove it has used the "least restrictive" alternative; and the facts of this case demonstrate why it would not be appropriate for us to read such a requirement into the statute.
 
 
 18
 The Eastern Co. is a conglomerate. During the years of Pattin's financial difficulties, as the company showed, the profits earned by other Eastern divisions exceeded the dividends paid to the shareholders. George Vass, Pattin's managing director, is an Eastern employee who was rewarded for helping Pattin tighten its belt to survive the coal industry's economic decline. With only four exceptions, Pattin did not give any of its employees raises after April of 1982. Pattin's evidence showed that between 30 and 40 hourly employees and nine salaried employees were laid off as a result of the economic situation. Of the nine salaried employees, four were over the age of 40 and five were under 40. It was against this background that the district court found that there were legitimate business reasons for the discharge of the two plaintiffs. The district court's finding is in no way vulnerable under the clearly erroneous test, which is the test we must apply on appellate review.
 
 
 19
 It would be a truly startling usurpation of power for the courts to hold, in the absence of clear statutory warrant, that redundant jobs may not be eliminated as long as the employer pays any dividends or makes any increases in the compensation of employees who remain on the payroll. A company that is prohibited from paying dividends is a company that is likely to have difficulty raising needed capital at a reasonable cost; and a company that lacks capital for investment in plant and equipment is likely to find itself losing ground to competitors, at home or abroad, who are not similarly constrained. By the same token, a company that is prohibited from paying its key employees what it will take, in the company's judgment, to retain and motivate such people is less likely to flourish and grow--and create new jobs in the process--than competitors not so constrained. If the courts of this country were to change the law as the plaintiffs in this case have urged us, in effect, to do, the long term result could well be a less productive and vibrant economy than that which the country would otherwise enjoy.
 
 
 20
 Perhaps it is not self-evident that the price of a flourishing national economy is one that is worth paying. The person who is forced against his wishes to go out and look for a new job will not necessarily take much comfort in the thought that the country as a whole may be better off with a relatively free economy than with one in which each worker who is able to get a job can keep it as long as he likes, regardless of whether there is a continuing need for it. If a smaller economic pie would be the likely consequence of the recipe favored by the plaintiffs, there is certainly room for argument--on religious, philosophical or political grounds--that a smaller pie is preferable to a larger one, particularly if the individual slices can be made to come out more nearly equal in size. Such arguments may seem attractive to at least two groups of people: those who think they would fare relatively better, in comparison to their neighbors, if the task of dividing the pie were turned over to the government, and those who, under such a system, would be given the power to wield the knife.
 
 
 21
 Regardless of how one assesses the merits of such arguments, however, policy questions of this sort are not to be decided, under our form of government, by an unelected judiciary. Our task is to apply the laws that the people's elected representatives have actually adopted; we are not here to pass laws that Congress has failed to pass. No Act of Congress authorized the federal courts to prevent the defendant in this case from restructuring its work force in accordance with its own business judgment on the best way to deal with changing economic conditions; such a restructuring was clearly what occurred here, and it was because of that, rather than because of their age, that the plaintiffs lost their jobs.
 
 
 22
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The court did not comment on the fact that Mr. Cleveland was replaced by someone within the protected age group