986 F.2d 1424
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
HIDDEN COVE MARINA, INCORPORATED, Plaintiff-Appellant,
v.
Arthur NEWELL, Newell & Grant, Limited an Illinois
corporation, Robert Schweiss, et al., Defendants-Appellees.
 No. 91-2899.
 United States Court of Appeals, Seventh Circuit.
 Argued June 9, 1992.
Decided Feb. 25, 1993.
Rehearing and Rehearing En Banc
Denied April 5, 1993.
 
 Before FLAUM and RIPPLE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 This is an appeal from a district court order granting summary judgment against Hidden Cove Marina (Hidden Cove) on its claim based on the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) (1988). Specifically, Hidden Cove claims that it was removed from towing referral lists maintained by the Village of Fox Lake and Lake County, Illinois, because of illegal bribes paid by defendant Robert Schweiss, who maintained a competing towing company. For the reasons that follow, we now affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 
 3
 Hidden Cove is an Illinois corporation owned by Ray Freeman and his wife. From 1974 until December 1982, Hidden Cove operated a towing business in Fox Lake, Illinois. Hidden Cove received a substantial portion of its business from an "approved" referral list maintained by the Village of Fox Lake. The Village referral list was used by local officials when traffic accidents or abandonment of vehicles resulted in the need for towing. Hidden Cove first applied for approval and was placed upon the Village referral list in 1974. Hidden Cove was also placed upon the Lake County referral list, which generated referrals for incidents on county roads in the Fox Lake vicinity.
 
 
 4
 The Village referral list was officially maintained by the chief of police; who was appointed by the Village mayor. At all times relevant to the current dispute, Robert Trinski was the chief of police and Richard Hamm was the mayor of Fox Lake. The County referral list was maintained by the sheriff, who was elected. In November 1982, Robert Babcox was elected sheriff of Lake County.[1]
 
 
 5
 By 1979, Hidden Cove and A-1 Auto Route 12, Inc. ("A-1 Auto"), a competitor of Hidden Cove, were the only two towing companies receiving referrals from the Village of Fox Lake. Robert Schweiss is the president, sole shareholder and manager of A-1 Auto. The Village alternated referrals between Hidden Cove and A-1 Auto on a set month-to-month basis.
 
 
 6
 On May 7, 1982, Ray Freeman received a telephone call from Lieutenant Nagle of the Village of Fox Lake police department informing him that Hidden Cove had been removed from the Village towing list. Freeman inquired why and was told he would have to speak to Chief Trinski, who in turn refused to give any explanation beyond "I've seen fit to take you off." See Trinski Dep. at 32; Freeman Dep. at 40. Chief Trinski later stated that he removed Hidden Cove from the referral list because of dissatisfaction with its performance. Specifically, Trinski stated that Hidden Cove (1) complained repeatedly if the police accidentally referred motorists to A-1 Auto on the last day of Hidden Cove's month, (2) failed to follow explicit instructions to tow a police car first at the scene of an accident, and (3) refused to pay for damage they had caused to a car which they were contracted to tow. None of these alleged incidents was documented by the police department. In November 1982, after Sheriff Babcox was elected, Hidden Cove was also removed from Lake County's towing referral list. Shortly thereafter, in late 1982, Hidden Cove shut down its towing operations because the business was "uneconomical without referrals from either the Village or the County." Appellant's Br. at 11. Hidden Cove's removal from the Fox Lake tow list gave A-1 Auto a virtual monopoly over referral business from the Fox Lake police.
 
 
 7
 In May 1985, Mayor Hamm was indicted and pled guilty to charges alleging that between about December 1982 and July 1983 he received money in connection with his approval of the Fox Lake towing contract. Mayor Hamm admitted having received bribes from Arthur Newell, who was Schweiss' attorney at the time. Newell was also indicted and pled guilty to obtaining money from Schweiss which he in turn used to bribe Mayor Hamm in connection with the towing referral list. Although there is no specific allegation that money changed hands prior to December 1982, Newell testified in his deposition that he met with Schweiss in March 1982 to discuss "strategies" for expanding A-1 Auto's business. Newell further testified that it was well known that he was close to County Sheriff Candidate Robert Babcox and it was clear that Schweiss was asking him if he could use his influence to improve A-1 Auto's status on both the Lake County and Fox Lake Village referral lists. Newell Dep. at 24-28.
 
 
 8
 Hidden Cove brought the present civil RICO suit against Schweiss[2] alleging that "but for" Schweiss' racketeering activities, Hidden Cove would have remained on the Fox Lake Village and Lake County towing referral lists. Schweiss maintains that there is no causal connection between the bribery scheme and Hidden Cove's removal.
 
 II
 PROCEEDINGS IN THE DISTRICT COURT
 
 9
 After the close of discovery, Schweiss filed a motion for summary judgment, which was referred to a magistrate judge. The magistrate judge determined that there was nothing in the record that would indicate that Hidden Cove was removed from the tow list because of the bribes that Schweiss passed to Hamm. As a result, Hidden Cove could not establish a causal connection between its injury and Schweiss' racketeering. Consequently, the magistrate judge recommended that summary judgment be granted for Schweiss on the RICO claim. The magistrate judge found relevant the fact that Hidden Cove was removed in May 1982, seven months before the first bribe. The magistrate judge also noted that there was no evidence suggesting that the recipient of the payments, Mayor Hamm, made any decisions regarding the towing referrals of Fox Lake. In the magistrate judge's view, all of the decisions were made by the police chief without any communication or pressure from the Mayor.
 
 
 10
 Hidden Cove filed objections to the magistrate judge's Report and Recommendation. The district court overruled the objections and granted summary judgment for Schweiss. The court concluded that Hidden Cove could make no showing that its injury (loss of position on the tow list) was causally related to Schweiss' bribing of Hamm. The district court based this conclusion on several grounds. First, it found that there was no evidence in the record that would indicate that Hamm had any influence on the decision to remove Hidden Cove. The court noted that Police Chief Trinski, Attorney Newell, and Mayor Hamm all testified that Hidden Cove's removal was Trinski's decision alone and was not influenced by the bribery scheme between Schweiss, Newell and Hamm. The district court rejected Hidden Cove's suggestion that a genuine issue of material fact was raised by Newell's testimony that Schweiss had consulted him as early as March 1982, several months before May 1982, to discuss Schweiss' desire to expand A-1 Auto's business. The court concluded that Hidden Cove had taken Newell's testimony out of context. Specifically, the court stated that the conversation did not occur two or three months before Hidden Cove was removed from the tow list and only concerned the County referral list and not the Village list. Mem.Op. at 5.
 
 
 11
 The district court then turned to the chronological relationship of the bribery of Mayor Hamm and the removal of Hidden Cove from the list. In this regard, the court confused the dates and erroneously reported that the Schweiss-Newell bribes to Hamm began in May 1982 and that Hidden Cove was removed from the tow list in December 1982. On the basis of this misapprehension, the court concluded that the fact that "there [was] a six-month time period during which Schweiss made payments and Hidden Cove remained on the tow list" indicated that the bribes were not related to the removal of Hidden Cove from the list. Mem.Op. at 6. Finally, the district court concluded that:
 
 
 12
 The testimony submitted by the defendant is uncontroverted that while Hamm accepted bribes paid to ensure A-1 Auto's continued receipt of referral business, Hamm never exerted any influence on A-1 Auto's behalf.... Hamm's plea of guilty to bribery charges and his failure to influence the selection of towing companies used by Fox Lake are factually not mutually exclusive.
 
 
 13
 Mem.Op. at 4.
 
 III
 ANALYSIS
 
 14
 Two issues are raised on appeal. Hidden Cove contends that the district court erred during discovery in sustaining Schweiss' objection to Mayor Hamm responding to questions about a conversation he had with Schweiss' attorney shortly before Hamm was deposed. Additionally, Hidden Cove contends that the district court erred in granting summary judgment. We address these contentions in turn.
 
 A. Discovery Ruling
 
 15
 In the course of discovery, Hidden Cove deposed Mayor Hamm. During Hamm's deposition he testified that prior to being deposed, he telephoned Schweiss' attorney. When Hidden Cove's attorney asked Hamm about the substance of the conversation, Hamm objected to the question on the grounds of attorney work product. The parties stopped the deposition and telephoned the district court. The district court sustained the objection on the grounds of relevancy.[3] Consequently, Hamm did not testify further about the conversation. This telephone discovery ruling was not transcribed in the record, but the parties do not dispute the ruling or the grounds upon which it was made.
 
 
 16
 Hidden Cove submits that relevancy in the discovery context is very broad; even inadmissible evidence is discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence." F.R.C.P. 26(b)(1); Eggleston v. Chicago Journeymen Plumbers' Local Union, 657 F.2d 890, 903 (7th Cir.1981), cert. denied, 455 U.S. 1017 (1982). Schweiss counters that Hidden Cove's reliance upon Eggleston is misplaced because the deponent in that case simply refused to answer deposition questions; the issue was not submitted to the district court for a ruling. We agree. In the present case, the district court made a determination as to relevancy; that ruling is reviewable only for an abuse of discretion. Ross v. Black & Decker, Inc., 977 F.2d 1178, 1185 (7th Cir.), petition for cert. filed, 61 U.S.L.W. 3481 (Dec. 23, 1992) (No. 92-1082); Olive Can Co. v. Martin, 906 F.2d 1147, 1152 (7th Cir.1990). Schweiss contends that, even if, arguendo, the evidentiary ruling was erroneous, it has no bearing on whether a genuine issue of material fact exists. In light of the record, we agree. The discovery stage of this case spanned several years and resulted in hundreds of pages of deposition testimony. Hidden Cove was permitted to ask Hamm about the relevant time period, 1974-1983, in detail. Accordingly, we cannot conclude that the district court abused its discretion in sustaining Schweiss' objection.
 
 B. Summary Judgment
 
 17
 We review a district court's grant of summary judgment de novo. To affirm we must find that the evidence, when all factual inferences are taken in the light most favorable to Hidden Cove, the nonmovant, presents no genuine issue of material fact and that Schweiss is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Anderson v. Stauffer Chem. Co., 965 F.2d 397, 400 (7th Cir.1992). At the summary judgment stage the court may not weigh evidence or make credibility determinations. The court's only inquiry is whether there is a genuine issue for trial, i.e., "whether a proper jury question [is] presented." Liberty Lobby, Inc., 477 U.S. at 248. On the other hand, in reviewing evidence opposing a motion for summary judgement, the court is not obliged to entertain a "metaphysical doubt." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
 
 
 18
 In order to recover for the civil RICO violation alleged, Hidden Cove must establish, inter alia, injury "by reason of" Schweiss' racketeering activity. See 18 U.S.C. § 1964(c); Holmes v. Securities Investor Protection Corp., 112 S.Ct. 1311 (1992) (proximate cause required under RICO); Haroco, Inc. v. American Nat'l Bank & Trust Co., 747 F.2d 384 (7th Cir.1984) aff'd per curiam, 473 U.S. 606 (1985) ("by reason of" language of § 1964(c) "simply imposes a proximate cause requirement on plaintiffs"). 18 U.S.C. § 1964(c) provides:
 
 
 19
 Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.
 
 
 20
 The linchpin of this appeal is whether Hidden Cove can establish a reasonable inference that the bribery scheme in which Schweiss participated was a causal factor in Hidden Cove's removal from the towing referral list. See Reynolds v. East Dyer Dev. Co., 882 F.2d 1249, 1254 (7th Cir.1989) (finding that plaintiff could not show causation was sufficient grounds for summary judgment in civil RICO action). Hidden Cove challenges both of the district court's alternative grounds for concluding that there is no causation in this case: (1) that there is nothing in the record to indicate that Hamm had any influence over the removal, and (2) that the bribes began after Hidden Cove had been removed from the referral list. We shall address both, although in reverse order.
 
 
 21
 As we have already noted, the district court disposed of Hidden Cove's contention that the timing of their removal raised a reasonable inference of causation as follows: "Hidden Cove's argument ignores the fact that there is a six-month time period during which Schweiss made payments and Hidden Cove remained on the tow list." Mem.Op. at 5. The district court's conclusion was based upon a factual error in the timing sequence. The first known bribe payment came after Hidden Cove was removed from the list. In recommending that the district court grant summary judgment, the magistrate judge correctly noted that Hidden Cove was removed from the towing list five months before Schweiss began bribe payments to Hamm. Schweiss admits that the district court confused the chronology of events, but argues that the error was harmless when the entire record and the magistrate judge's Report and Recommendation are reviewed.
 
 
 22
 Hidden Cove argues that the magistrate judge was too hasty to conclude that no causal connection exists here because the bribes began long after Hidden Cove was dropped from the two list. Hidden Cove posits a number of situations in which the bribe to Hamm could have influenced the decision to terminate Hidden Cove. Schweiss characterizes these contentions as mere speculation.
 
 
 23
 We do not believe that this issue of the chronology of the bribe and the removal of Hidden Cove from the towing lists can be considered dispositive. Hamm could have begun influencing towing contracts before Hidden Cove was terminated, even though no money actually changed hands at that time. Hidden Cove submits that, even if the payments did begin in December, Hamm and Schweiss could have agreed to drop Hidden Cove from the referral list in May and to begin payment for the favor at a later date. There is nothing unreasonable about deferred payments or the possibility that Schweiss did not want to pay Hamm unless and until his objective was achieved.
 
 
 24
 Even if we accept Hidden Cove's characterization of the chronological relationships of the events at issue, it cannot prevail unless, on the record before us, there is a genuine issue of triable fact as to whether Hamm, the recipient of the bribe, actually influenced the decision adverse to Hidden Cove. In this regard, Hidden Cove submits that the district court erred in concluding that the record could not support the conclusion that Schweiss' bribery of Hamm had a causal relationship to the removal of Hidden Cove from the towing referral list. Specifically, the district court stated:
 
 
 25
 It is undisputed that Hamm exerted no control over which businesses were placed on the tow list.... Chief Trinski unilaterally determined that Hidden Cove should be removed from the list, after Hidden Cove refused to compensate the owner of a car, which was damaged when Hidden Cove towed it.
 
 
 26
 Mem.Op. at 5.
 
 
 27
 Hidden Cove contends that Hamm's plea of guilty to accepting bribes in connection with the Village "towing contract"[4] creates a genuine issue of fact as to whether he influenced Hidden Cove's position on the towing referral list. It argues that this guilty plea, in itself, indicates that Hamm did have something to do with the referral list. We cannot accept this submission. In our view, the district court correctly concluded that the fact that Hamm pled guilty to taking bribes in relation to towing contracts does not necessarily mean that he influenced the removal of Hidden Cove from the tow list. Most fundamentally, the record contains no rebuttal to the deposition testimony of Newell, Hamm, and Trinski, who each testified that Hamm was not involved with the termination of Hidden Cove. Without such evidence, the record contains no more than a "metaphysical doubt" concerning Hamm's role in the termination. Matsushita Elec. Indus. Co., 475 U.S. at 586.
 
 
 28
 One can speculate as to why Schweiss would risk substantial civil and criminal liability and then target the wrong person for his bribe. Similarly, one can speculate that Hamm could have subtly influenced Trinski, his appointee, without actually approaching him about the matter. However, such speculation cannot support a jury verdict. Likewise, Chief Trinski's testimony might have been subject to impeachment because he gave no reason for removing Hidden Cove from the referral list until confronted with a lawsuit and none of the alleged shortcomings of Hidden Cove were ever documented. Nor was Hidden Cove ever alerted to any alleged dissatisfaction with their service prior to actually being removed from the referral list. A motion for summary judgment cannot be resisted, however, on the ground that a witness' credibility might be impeached at trial. See Parker v. Federal Nat'l Mortgage Assoc., 741 F.2d 975, 980 (7th Cir.1984) (there is no genuine issue of fact if the most that the plaintiff can hope for is to discredit the movant at trial).
 
 Conclusion
 
 29
 The district court correctly concluded that no genuine issue of triable fact exists on the issue of proximate cause. Accordingly, its judgment is affirmed.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 Sheriff Babcox is deceased and died before his deposition was taken. Consequently, the facts Hidden Cove alleges focus on the Village referral list
 
 
 [2]
 Arthur Newell was initially named as an additional defendant, but has been subsequently voluntarily dismissed from the present appeal
 
 
 [3]
 Hidden Cove first argued that the attorney work product doctrine is not applicable because the questions were asked directly to Hamm, not the attorney involved. We decline addressing this issue because the work product doctrine was not the basis of the district court's ruling. The court sustained Hamm's objection to answering the question on the basis of relevancy
 
 
 [4]
 At oral argument both parties conceded that there was no Village towing "contract" per se, but that the plea referred to the towing referral system maintained by the Village